UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|  |  |  |
|---|---|---|
| **Mark Brown, Individually, Pro Se, Plaintiff,**<br><br>**v.**<br><br>**Edward Evan Nelson Brown, Defendant,**<br><br>**Mark Deter Hanf, Individually, and as President of the Managing Members of Pacific Private Money Group, LLC, Defendant,**<br><br>**Pacific Private Money Group, LLC, Defendant** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CASE NO. 2:25-cv-00028-Z** |

# PLAINTIFF'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiff, Mark Brown, Individually, Pro Se, files this First Amended Complaint against Defendants, Edward Evan Nelson Brown (Edward Brown), Mark Deter Hanf (Mark Hanf), Individually, and as President of the Managing Members of Pacific Private Money Group, LLC, and Pacific Private Money Group, LLC (PPMG), and respectfully shows the Court as follows:

This is a civil action for damages arising from Defendants' systematic scheme to defraud Plaintiff through breach of contract, breach of fiduciary duty, conversion of his $445,000 partnership interest, intentional infliction of emotional distress, and whistleblower retaliation. Defendants violated the Operating Partnership Agreement by excluding Plaintiff from decision-making, falsely representing his resignation, and converting his partnership interest. Following Plaintiff's internal reporting and SEC whistleblower complaint, Defendants retaliated by stripping his authority, issuing false cease-and-desist demands, and defaming his reputation while misappropriating investor funds from Pacific Southwest Note Fund, LLC ("PSNF") and Pacific Southwest Management Group, LLC ("PSMG").

# A. Jurisdiction and Venue

1. **Diversity Jurisdiction (28 U.S.C. § 1332(a))**
   - This Court has jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and all Defendants, all the amount in controversy far exceeds $75,000.00, Plaintiff is a citizen of Texas, Defendants Edward Brown and Hanf are citizens of California, all known members of PPMG are citizens of states other than Texas, specifically California, Colorado, and New York, establishing complete diversity of citizenship.

2. **Federal Question Jurisdiction (28 U.S.C. § 1331)**
   - This Court also has jurisdiction because Plaintiff asserts claims arising under the laws of the United States, specifically:
   - Securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934. 15 U.S.C. § 78j(b) (2018); 17 C.F.R. § 240.10b-5 (2024).
   - Whistleblower retaliation in violation of Section 21F(h) of the Securities Exchange Act (15 U.S.C. § 78u-6(h)) under the Dodd-Frank Act.
   - As these are federal causes of action, federal question jurisdiction is proper.

3. **Venue:**
   - Venue is proper in the Northern District of Texas, Amarillo Division, pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this District and Division.in this District, or the defendants are subject to personal jurisdiction here.

   **In support of venue, Plaintiff alleges:**

- **Geographic scope of operations**: Plaintiff's core business operations were conducted predominantly across the 26 counties comprising the Amarillo Division, requiring manual data collection, real estate research, and intellectual property development that could not be outsourced to other regions.
- **Substantial resource allocation**: Plaintiff hired and trained approximately 60 employees (retaining 15 key employees over 30+ months) to conduct fieldwork, training, and operational activities specifically within these counties from 2020 through 2023.
- **Operational center**: Unlike urban counties where commercial data was readily available, these 26 counties required on-the-ground human labor and specialized expertise, making the Amarillo Division the clear center of Plaintiff's business activities.
- **Locus of harm**: The alleged misconduct by Defendants directly impacted Plaintiff's business operations centered in the Amarillo Division, causing financial and operational harm within this District.
- **Legal standard**: Under 28 U.S.C. § 1391(b)(2) and Fifth Circuit precedent, venue is proper where a substantial part of the events giving rise to the claims occurred, which

standard is satisfied by the concentration of Plaintiff's core operations within this Division.

## B. Parties

1. **Plaintiff(s):**
   o   Mark Brown, is an individual, residing at 5109 82nd St., Ste. 71135, Lubbock, TX 79424 and is a citizen of Texas.
2. **Defendant(s):**
   o   Edward Brown, is an individual, residing at 21 Pepper Way, San Rafael, CA 94901, and is a citizen of California.
   o   Mark Hanf, is an individual who resides at 59 Via Los Altos, Belvedere Tiburon, CA 94920, and is a citizen of California, and serves as President of the Managing Members of Pacific Private Money Group, LLC, a Delaware limited liability company.
   o   Pacific Private Money Group, LLC, is a Delaware limited liability company with its principal office located at 1555 Grant Ave., Novato, CA 94945. For diversity purposes, PPMG's citizenship is determined by the citizenship of all its members, which are as follows:
   - Pacific Capital Funding Group, Inc. a California corporation ("Hanf Co.") with Mark Hanf as President and its principal place of business at 1555 Grant Ave., Novato, CA 94945. As a California corporation with its principal place of business in California, Pacific Capital Funding Group, Inc. is a citizen of California.
   - Saluda Grade Alternative Lending & Fintech Growth Fund 1 LP, a Delaware limited partnership with a principal place of business at 270 Madison Avenue, Suite 702, New York, NY 10016, Upon information and belief, this partnership's citizenship is determined by the citizenship of all its partners, which include:
     - Timothy Carr (CIO), resident and citizen of New York
     - Ryan Craft (Founder), upon information and belief, resident and citizen of Colorado
     - Brian Brennan, upon information and belief, resident and citizen of New York Upon information and belief, all partners of Saluda Grade are citizens of states other than Texas, establishing complete diversity.

   Plaintiff lacks access to complete membership records and requests leave to conduct jurisdictional discovery if Defendants challenge these allegations.

## C. FACTUAL BACKGROUND

Plaintiff alleges severe financial misconduct by Defendants within Pacific Southwest Management Group, LLC ("PSMG") and Pacific Southwest Note Fund, LLC ("PSNF"). Defendants misappropriated investor and company funds, breached fiduciary duties, and conducted unauthorized financial transactions, devaluing Plaintiff's equity and exposing investors to significant risks. Defendants also misrepresented Plaintiff's resignation to undermine his authority and excluded him from decision-making.

PSMG is a Delaware limited liability company that serves as the management group for PSNF. PSNF is a Delaware limited liability company operating as a mortgage pool fund specializing in discounted seller carry-back mortgages.

Under the Operating Partnership Agreement ("OPA"), governance structure and roles remain as originally defined. The OPA requires certified mail for any changes, and no such notifications have been provided. This is the only Operating Agreement in existence that Plaintiff has signed and executed. {EXHIBIT A}

Plaintiff proceeds pro se because Defendants' unlawful misapplication of his funds has left him without financial resources to retain legal counsel.

### Defendants' Financial Capacity and Ability to Satisfy Judgment

Mark Hanf controls multiple investment entities with substantial assets, including Pacific Private Money Group, LLC, Pacific Capital Funding Group, Inc., and various funds (Pacific Option One LLC Fund, Alpha One LLC Fund, Pacific Private Money Inc., Pacific Freedom Fund LLC, Pacific Private Money Fund LLC, Pacific Opportunity Fund LLC). His flagship company, Pacific Private Money Inc., demonstrates extraordinary financial capacity with annual loan originations growing from $50 million in 2015 to over $400 million in 2021—a 700% increase over six years. The company maintains a $90 million loan servicing portfolio, serves 350 investor clients, and has funded over 1,250 private money loans since 2008. Operating from a principal office at 1555 Grant Ave., Novato, CA 94945, and residing at 59 Via Los Altos, Belvedere Tiburon, CA 94920, Hanf's locations further indicate substantial personal assets and financial resources.

Edward Brown demonstrates substantial financial capacity through his track record of executive leadership and successful capital management. As the former CEO of a $40 million alternative lending company in Marin County, California, Brown directed operations for over two decades, demonstrating sustained financial stewardship and industry expertise. His current role with Pacific Private Money evidences his continued involvement in significant financial undertakings, where he has contributed to the rapid expansion of their Freedom Fund from its initial scope to approximately $45 million within three to four years. Brown's diversified professional portfolio, including his media properties "Sports Econ 101" and "The Best of Investing with Mark Hanf," reflects his comprehensive understanding of financial markets and business operations, establishing a strong foundation for meeting potential judgment obligations.

The misappropriated funds totaling approximately $10,000,000 in converted mortgage loan assets remain within Defendants' control or were transferred to entities under their control. Given Hanf's demonstrated ability to manage hundreds of millions in annual loan originations through his various entities and Brown's extensive financial background, Defendants have demonstrated continued access to and control over significant financial resources necessary to satisfy potential judgments. **The substantial scale of their operations, combined with their proven ability to transfer funds between multiple entities, indicates sufficient financial capacity to meet judgment obligations.**

**Mark Brown's Role:**

Per the OPA, Mark Brown serves as President with primary authority for day-to-day operations and decision-making. His written approval is mandatory for all significant company actions, including acquisitions and decisions affecting the Company's structure, assets, and governance. Mark Brown contributed the functional business model, proprietary intellectual properties, and essential resources to the company.

**Actions Requiring Mark Brown's Approval:** The Operating Agreement requires Mark Brown's written approval for:

1. Changes in compensation or distributions to Members
2. Capital calls issued by the Company
3. Valuation of Membership Interests
4. Loans exceeding $10,000 outside normal business operations
5. Sales or disposal of assets, including intellectual property
6. Admission of new Members or ownership changes
7. Amendments to the Operating Agreement
8. Major transactions, including mergers, asset sales exceeding 10% annually, bankruptcy, or dissolution

**Mark Brown's Leadership**

Despite systematic exclusion by Defendants, Mark Brown has worked to investigate financial irregularities, document unauthorized transactions, and protect PSNF and PSMG stakeholders. In 2024, Mark Brown filed a Federal whistleblower complaint with the SEC to address these issues. {EXHIBIT B} His efforts demonstrate his commitment to transparency and mitigating investor losses caused by Defendants' actions. Following his SEC whistleblower complaint, Defendants engaged in retaliatory conduct against Mark Brown.

**Mark Brown's Contributions**

Mark Brown provided substantial contributions to PSMG and PSNF, and experience including vast knowledge, significant financial capital, intellectual property, and the operational framework. His position as Co-Manager PSMG, and President PSMG entrusted him with responsibilities to protect the interests of PSNF and PSMG stakeholders. Despite these

contributions, Mark Brown was systematically excluded from decision-making processes, marginalized, and targeted by Hanf and Edward Brown to consolidate their power.

Mark Brown was the largest initial day-one investor with $445,000.00 in PSMG. {EXHIBIT C} {EXHIBIT D} {EXHIBIT E} From the company's inception, Mark Brown's capital account was improperly credited, reflecting a negative balance of ($-17,500.00). Even 56 months later, the account continues to inaccurately show the exact same negative balance. {EXHIBIT F}

**Financial Narrative amid Headwinds of Dishonest Dealings**

This financial narrative provides a high-level overview of the state of PSNF and PSMG and is non-accounting based. It is based solely on **mortgage loan servicer records and reconciled bank statements** and is not derived from any accounting work product.

Due to Defendants' accounting irregularities and admitted sabotage of financial records, the following represents the most reliable financial information currently available to Plaintiff, with complete accuracy requiring court-ordered discovery and forensic analysis.

1. PSMG/PSNF was successfully established, fully staffed, and professionally trained at the peak of the Covid-19 pandemic.
2. Acquisitions: Borrower balances totaled $9,763,673.18.
3. Total Mortgage Valuations: The acquired mortgage portfolio collateral was valued at $16,700,618.00, resulting in a 58% Investment to Value (ITV) ratio.
4. Investor Funds Deployed: A total of $2,997,300.00 in investor funds were used for acquisitions as of 1/11/2023.
5. Discount Dollars Acquired: A total of $3,393,988.85 was captured through steeply discounted acquisitions.
6. Remaining Borrower Balances: The portfolio retains $3,992,170.82 in borrower balances, along with an unknown number and balances of a handful of poorly serviced mortgage loan files located at the Novato, CA office as of 12-31-2022.
7. Successful Closings: Over 100 steeply discounted mortgage loan acquisitions were successfully completed.
8. Mortgage Servicing Collections: Collections from mortgage servicing totaled $4,503,000.00 as of 12-31-2022.
9. Net Profit: Over 29 months of investing, profits realized $2,399,000.00, averaging $80,000.00 per month.
10. Trained Staff: A skilled team of 15 employees, valued at $1,200,000.00, supported these efforts.
11. Default Resolutions: Dozens of defaulted mortgage loans were resolved, including foreclosures, bankruptcies, civil litigation, and other specialty default mortgage loan servicing operations.
12. Ongoing Litigation Management: PSMG continues to oversee inside and outside litigation to protect investor interests Cause No. CL-21-2159-B Calico Construction V. Enhance Mortgage Corp.  Hidalgo, County Texas
13. No Losses to Investors: No losses related to serviced mortgage loans, hazards, or other risks occurred under this management.

14. Collection Rates: Achieved 99% collection rates for paying mortgages and 100% upon resolution of defaulted mortgage loans.
15. Unparalleled Yields: The fund achieved a 34.662% acquisition yield, the highest ever seen by this fund type in San Francisco, California.

**Edward Brown's Role:**

Edward Brown describes himself online as having, "earned his B.S. in Accounting and M.S in Taxation from Golden Gate University, and has held licenses and certifications including Real Estate Salesperson, Insurance License, Series 7 Securities License, Tax Preparation License, and Certified Fund Specialist."

Per the Operating Partnership Agreement, Edward Brown serves as a Member with defined voting and FREE ownership rights of 20%, shares general responsibilities of contributing to and raising investor funds, alongside the other members, and participates in decisions requiring a majority vote as outlined in the Agreement, in addition to fiduciary duties of care and loyalty owed to Mark Brown. Edward Brown has a fiduciary duty to act in good faith and not harm the company or its reputation. He is not authorized to act independently or bind the company without prior written approval of Mark Brown. {EXHIBIT G} He does not have explicit operational or managerial authority unless delegated by Mark Brown. While he has a voice in significant company decisions, all actions also require Mark Brown's specific approval, limiting Edward Brown's authority under the Operating Partnership Agreement to any Mark Brown agrees to.

Edward Brown has limited decision-making responsibilities, under the Operating Partnership Agreement compared with Mark Brown.

In a further effort to defraud, Edward Brown, on several occasions, has stated unequivocally to Mark Brown directly, he has no personal or individual knowledge whatsoever of any accounting records or books for PSNF or PSMG from 2020 – 2025.

Edward Brown has been a de facto employee of Mark Hanf for over 12 years.

Mark Brown, not a relative of Edward Brown, was introduced to Mark Hanf under the premise of implied trust and mutual interests. Despite this initial connection, and despite having no authority whatsoever under the OPA, Edward Brown has played a problematic role in the management operations and dynamics of these entities. His involvement has been characterized by three milestones during his tenure 1st his day one investment was supposed to $1,000,000.00 in contribution and in fact it was ZERO $0.00 USD in exchange for 20% ownership of the stock in (PSMG) and 2nd Without authority or notice in early 2022 Edward Brown and Hanf /PPMG did in fact began unknown BLACK-BOX operations where Mark Hanf told Mark Brown in early 2023, "…Edward Brown assimilated then acquired then facilitated $10,000,000.00 acquisition for $5,000,000.00," speaking on the conversion of mortgage loan assets by fraud. Mortgage loan assets owned by and paid for by the PSNF investors. 15 U.S.C. § 78j(b) (2018); 17 C.F.R. § 240.10b-5 (2024). 3rd he raised millions of dollars for several of Mark Hanf controlled entities not related to PSNF. Edward Brown has no fund experience in managing or overseeing long-term mortgage asset pools. He lacks any track record in this field

and has not demonstrated any prior involvement or expertise in such functions and is completely unqualified to be making these unauthorized investing decisions.

**Involvement Without Contribution**

From the outset, Edward Brown did not contribute any funds to PSMG, despite presenting himself as a stakeholder or someone with a vested interest. He did in-fact mislead Mark Brown on who the actual investors of PSMG LLC actually were. We were led to believe the investors were Edward Brown and Mark Hanf. In fact the investors were Mark Brown, PPMG, Saluda Grade, Inc. NY, NY and Fund I LP, NY, NY and their stakeholders. This absence of any financial investment by Edward Brown raises significant questions about Mark Hanf and Edward Brown's intentions and motivations for associating with these entities. Unlike Mark Brown, who has shouldered the financial and operational burdens, Edward Brown's lack of monetary contribution has created an imbalance in responsibilities and equity of PSMG.

**Profiling and Undermining**

Since late in 2016, Hanf/ PPMG. Edward Brown has engaged in a pattern of behavior that can only be described as profiling Mark Brown. This behavior appears to stem from intent to gather information, potentially to use it to his advantage or to the detriment of Mark Brown. Profiling in this context has involved:

• Surveillance: Keeping track of Mark Brown's professional activities, often in ways that suggest an invasive and impulsive overreach.
• Sowing Division: Subtly or overtly attempting to influence other stakeholders, employees, Fund administrators or external parties to question Mark Brown's decisions or integrity.

**Mark Hanf Role:**

Mark Hanf describes himself online as having, "earned a B.S. degree in Business Administration with a focus in finance and accounting from the Menlo School of Business Administration in Atherton, California. Licenses held by Mark include a California real estate brokers license (CA DRE #1811186), Mortgage Loan Originator's license (NMLS #331091), and California Finance Lender's license (CFL #6054605)."

Mark Hanf's responsibilities per the OPA, serves as a Member representing PPMG, is responsible for all contribution of start-up costs, operating costs, entity formation costs, marketing collateral, financial management support, accounting, and capital sourcing efforts.

Mark Hanf has limited decision-making responsibilities, under the OPA compared with Mark Brown on specific critical matters such as:

- mergers
- substantial asset sales,
- winding up the company
- approval of all company business and voting

8

- any change of membership interests or percentages
- any change in a Member interests and profit sharing
- The sale, hypothecation, pledge, disposal of, assignment of, lease, trade, etc. of Company property
- Loans made to any person or entity with Company funds, including, without limited the generality of the foregoing, one or more of the Members or any affiliate of a Member or Members in excess of $10,000.00 that are not considered part of normal business operations,

**All points above must include approval of Mark Brown.**

Mark Hanf, as the facilitator of the fraud, and Edward Brown, as the Mastermind of the fraud, orchestrated the misapplication of funds within the operations of PSMG and PSNF, both Delaware-based entities governed by an OPA. These entities, formed in May 2020, included Mark Brown as a Co-Manager of PSNF, Co-Manager of PSMG, and President of PSMG. While the entities were intended to engage in lawful activities such as fund management, lending, and investment development, Hanf and Edward Brown systematically undermined these objectives for their personal gain, engaging in financial misconduct and mismanagement to the detriment of Mark Brown, the investors of PSNF, and the shareholders.

Under the original OPA, ownership of PSMG was divided as follows:

- Mark Brown: 450 units (45%)
- Pacific Private Money Group, LLC (controlled by Mark Hanf): 350 units (35%)
- Edward Brown: 200 units (20%)

**Intimidation and Harassment**

From 2020 – 2025, Mark Brown was in fact subjected to a deliberate campaign of harassment by Mark Hanf/PPMG and Edward Brown **for purposes of their own monitory gain**, including but not limited to:

- **Intimidation, Bullying and Alienation:** Creating a hostile environment to undermine his authority and credibility.
- **Hounding and Badgering:** Relentless questioning and accusations to distract him from his responsibilities.
- **Plaguing and Pestering:** Overloading him with fabricated disputes and unnecessary demands.
- **Disturbance and Besieging:** Disrupting his work environment to isolate him and weaken his influence.
- At the time Mark Brown began to question his suspicions of misapplication of funds, Mark Hanf/PPMG and Edward Brown immediately and desperately began to manipulate Mark Brown and the management group for their own personal gains. Mark Brown experienced the harassment mentioned before in the form of an organized civil and criminal conspiracy, they attempted to manipulate Mark Brown into filing for personal bankruptcy in 2021 and again in 2023, to relinquishing ownership as majority

shareholder, in a pre-mediated attempt to manipulate the fund, fund investors, and fund management, all for the express purposes of their own personal monetary gain. {EXHIBIT H} The OPA states Mark Brown can only be removed as a member in a few ways, bankruptcy being one.

**Misrepresentation of Resignation**

- Defendants deliberately misrepresented Plaintiff's position within the company by citing a purported resignation letter dated February 6, 2023. {EXHIBIT I} This letter was merely a coerced draft {EXHIBIT J} shared during intense discussions and was never finalized, signed, or formally submitted and was never intended as such. It was labeled as a draft in email correspondence, never sent via certified mail, nor processed in any manner required by the OPA. No document was ever executed and no executed copy exists. Consequently, Plaintiff never resigned as Co-Manager of PSMG, or President of PSMG.
- The misrepresentation of his resignation was a deliberate act by Defendants to diminish his role and falsely portray his departure, isolating him from governance and decision-making. These acts compounded the harm inflicted upon him by undermining his authority and falsely portraying him as having stepped away from his responsibilities.

**Mismanagement and Unauthorized Operations**

Hanf/ PPMG and Edward Brown intentionally engaged in unauthorized "black-box" operations, deliberately concealing activities from Mark Brown. These actions violated the OPA, which required written approval from Mark Brown. Hanf/PPMG and Edward Brown disregarded these provisions, diverted and funneled funds into entities under Hanf's control, including:

- Pacific Option One LLC Fund
- Alpha One LLC Fund
- Pacific Private Money Inc.
- Pacific Freedom Fund LLC
- Pacific Private Money Fund LLC
- Pacific Opportunity Fund LLC

All these entities, based in Novato, California, were used to redirect company funds for Hanf's personal benefit without authorization or transparency.

**The Books are Bad**

Defendants admit the books are bad. In efforts to conceal or hide the misapplication of funds, the accounting books were intentionally sabotaged by Mark Faylor, at the direction of Mark Hanf, in early 2021. They were grossly inaccurate, riddled with numerous errors, and failed to align with proper financial standards. The IRS reporting records were similarly flawed, reflecting discrepancies that raised significant concerns. The 2022 an audit was secretly ordered and conducted, leading to incorrect conclusions and further perpetuating the inaccuracies. Despite repeated requests from Mark Brown, the defective records and audit findings, which had been

approved by Mark Hanf/PPMG and Edward Brown, were deliberately withheld from him, obstructing transparency and accountability. {EXHIBIT K}{EXHIBIT L}{EXHIBIT M}

**Examples of Financial Mismanagement and Comingle Funds**

Starting in 2020, without any form of authorization, funds were raised by Edward Brown and Mark Hanf, and investors were directed into one or more other funds controlled and owned by Hanf/Edward Brown, which were unrelated to PSNF/PSMG and did not share a like-kind fund structure. Additionally, these raised funds were deployed for unintended and unauthorized acquisitions without the approval or consent of Mark Brown. These funds were not authorized for deployment or "sitting in wait" {EXHIBIT N} These funds were directed to be returned to the investors because we didn't have deployable assets to acquire at that time.

Mark Hanf and Edward Brown over raised investor funds, without deploying these funds into as asset, as per the Manager, Mark Brown, and were advised to return the monies to PSNF individual investors. Instead, the monies were ultimately diverted for Mark Hanf and Edward Brown's personal gain.

Numerous, but not limited to, unauthorized banking transactions in 2020 – 2025 and comingling of funds amongst non like-kind funds illustrate the mismanagement and misapplication of funds:

These numerous transactions, totaling over $12 million, were neither approved, accepted, or acknowledged by Mark Brown nor aligned with the entities' objectives. (Exhibit DD)

**Impact of Mismanagement**

The actions of Hanf/PPMG and Edward Brown caused profound harm:

1. **Financial Harm:** Millions in misapplied funds devalued Mark Brown's equity and exposed PSNF investors to unnecessary risk of loss.
2. **Reputational Damage:** Mark Brown's association with entities unraveling under allegations of fraud tarnished his reputation, despite his efforts to act responsibly.
3. **Emotional Distress:** The campaign of harassment disrupted Mark Brown's ability to fulfill his duties and protect stakeholder interests.
4. **Investor Losses:** Mismanagement jeopardized investor funds, further complicating Mark Brown's efforts to mitigate damages.

**FACTUAL ALLEGATIONS**

1. Defendants, in their misappropriated investor and company funds for their personal benefit and engaged in acts of conversion of company and fund investor assets.
2. Defendants breached their fiduciary duties to Plaintiff and other investors by failing to act in the best interests of the company and its investors, instead using company resources for personal gain.
3. NO K1s provided for 2023 and 2024 for Mark Brown.

4. SEC filings not kept current and were last filed in 2021 until the original complaint was filed and served. {EXHIBIT O}
5. Unauthorized wires above $100,000.00.
6. Complete radio silence, shut out, no communication, returned mail, etc. {EXHIBIT P}{EXHIBIT Q}{EXHIBIT R}{EXHIBIT S}
7. Defendants were instructed to stop raising money via CMRRR, and failed to do so. {EXHIBIT T}
8. Against Plaintiff's expressed disagreement {EXHIBIT U}, Defendants intentionally changed Fund Administrators, from Verivest Fund Administration Portland, Oregon to Spiegel Accounting REIL Fund Administration Walnut Creek, CA, for the expressed purposes of their personal gain, approximately late 2022. Any communication between Plaintiff and Fund Administrator ceased on the date of this change.

**STATEMENT OF DAMAGES**

Plaintiff has suffered substantial individual damages as a direct result of Defendants' systematic misconduct, fraudulent scheme, and deliberate sabotage of financial records, and seeks his $445,000 personal investment rendered worthless, lost management income and distributions wrongfully withheld, lost future earnings from his excluded partnership role, reputational damage and lost business opportunities, consequential damages from being improperly excluded from operations, severe emotional distress from Defendants' systematic harassment campaign, and punitive damages that cannot be precisely quantified due to Defendants' deliberate destruction of critical financial evidence by Mark Faylor at Mark Hanf's direction in early 2021. While Defendants' unauthorized transactions and asset conversions totaling approximately $13,624,382.86 represent broader misconduct affecting company and investor funds, this pattern of misconduct directly harmed Plaintiff's individual interests and partnership rights, requiring forensic reconstruction and expert analysis through the discovery process to calculate the full extent of his personal losses. Plaintiff seeks recovery of all individual damages flowing from Defendants' breaches of contract, fiduciary duty violations, conversion of his partnership interest, intentional infliction of emotional distress, and whistleblower retaliation, and requests the Court shift the burden to Defendants to prove damages are less than claimed given their deliberate spoliation of evidence, order forensic reconstruction at Defendants' expense, and reserves the right to amend damage calculations as additional evidence is obtained through court-ordered discovery and expert analysis.

# D. Causes of Action

## COUNT I: BREACH OF CONTRACT

**Defendants violated the OPA through the following breaches:**

- Excluded Mark Brown from decision-making processes required under the OPA
- Failed to provide required financial reporting/accounting work product
- Refused to engage in required mediation as stipulated in the only fully executed OPA (Exhibit V)

- Falsely represented Mark Brown's resignation in violation of OPA sections 2.5 and 12.1 by:
    - Treating an unsigned draft letter as a formal resignation
    - Bypassing required resignation procedures (certified mail, formal processing)
    - Using this false resignation to exclude him from governance
    - Failing to follow proper procedures for management changes

Mark Brown's Individual Damages:

- Loss of his $445,000 investment
- Lost management fees and distributions he was entitled to receive ($ Amount TBD)
- Lost future earnings from his partnership role ($ Amount TBD)
- Reputational damage from false portrayal of his departure ($ Amount TBD)
- Lost business opportunities due to misrepresentation of his status ($ Amount TBD)
- Consequential damages from being improperly excluded from business operations ($ Amount TBD)
- Emotional distress from deliberate mischaracterization of his role ($ Amount TBD)

6 Del. C. § 18-402, 6 Del. C. § 18-1101(c), 6 Del. C. § 2001, OPA section 2.5, 2.6, 2.7, 2.9, 2.9(b), 2.9(b)iii, 2.11(e,f, l,s), 2.12, 2.13, 2.14, 2.15, 3.4, 4.2, 4.5, 5.5, 6.1, 7.1, 7.2, 7.4, 7.6, 8.1, 8.2, 8.3, 9.1, 11.1, 12.1

## COUNT II: BREACH OF FIDUCIARY DUTY OWED TO MARK BROWN

- Defendants owed fiduciary duties to Mark Brown under the OPA and federal securities law
- Breached these duties by misrepresenting his capital account balance (-$17,500 instead of proper credit for $445,000 investment)
- Failed to act in Mark Brown's best interests as a partner
- Securities law violations that damaged Mark Brown's reputation and business relationships
- Liability exposure from investor claims due to defendants' securities fraud

Mark Brown's Individual Damages:

- Financial losses from improper accounting ($ Amount TBD)
- Loss of partnership value and investment returns ($ Amount TBD)
- Reputational damage from defendants' misrepresentations about his role and departure ($ Amount TBD)
- Lost future business opportunities in the industry ($ Amount TBD)
- Emotional distress from breach of trust and professional relationship ($ Amount TBD)

Plaintiff additionally seeks disgorgement and fee forfeiture of any monies wrongfully obtained by Defendants.

(15 U.S.C. § 78j(b)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5), 6 Del. C. § 18-1101(c), 6 Del. C. § 18-402, 6 Del. C. § 18-1104, OPA sections: 2.5, 2.6, 2.7, 2.11, 3.4, 4.1, 4.2, Exhibit A 450 units, 7.1, 7.2,

## COUNT III: CONVERSION OF MARK BROWN'S PARTNERSHIP INTEREST/INVESTMENT

- Defendants wrongfully converted Mark Brown's $445,000 investment and partnership interest
- Used his funds for unauthorized purposes while excluding him from operations

Mark Brown's Individual Damages:

- Loss of his specific $445,000 investment
- Lost management income and distributions ($ Amount TBD)
- Lost future earnings from converted partnership interest ($ Amount TBD)
- Consequential damages from loss of business platform ($ Amount TBD)

6 Del. C. § 18-303, 6 Del. C. § 18-607, 6 Del. C. § 18-502, 6 Del. C. § 18-503, OPA Sections 1.7, 2.6, 2.7, 2.10, 2.11(g), 2.12, 2.15, 2.5, 4.1, 4.2, 4.5, 5.2, 5.3, 5.5, 7.2

## COUNT IV: INTENTIONAL INFLICTION OF EMOTION DISTRESS

- Defendants' extreme and outrageous conduct in misrepresenting Mark Brown's financial contributions and role
- Deliberate exclusion and false portrayal of his resignation

Mark Brown's Individual Damages:

- Severe emotional distress ($ Amount TBD)
- Reputational harm in professional community ($ Amount TBD)
- Lost business relationships and opportunities ($ Amount TBD)

6 Del. C. § 18-1101(c), 6 Del. C. § 18-303, OPA Sections: 1.6, 2.5, 2.6, 2.7, 2.11, 3.1, 3.4, 4.1, 7.1, 6.1, 7.5, 9.2(e), 12.0, 12.1,

## COUNT V: WHISTLEBLOWER RETALIATION (15 U.S.C. § 78u-6(h))

Following Plaintiff's internal disclosures beginning in 2022 and formal SEC whistleblower complaint on August 13, 2024, Defendants engaged in a systematic pattern of retaliation prohibited under 15 U.S.C. § 78u-6(h) of the Dodd-Frank Wall Street Reform and Consumer Protection Act, which prohibits retaliation against individuals who engage in protected whistleblower activity by providing information to the SEC regarding potential securities law violations.

14

1. **Protected Whistleblower Activity**: Plaintiff engaged in protected activity by internally reporting suspected securities violations beginning in 2022 and filing a formal whistleblower complaint with the SEC on August 13, 2024, regarding Defendants' misuse of investor funds and violations of federal securities laws.

2. **Defendants' Knowledge**: Defendants knew or suspected that Plaintiff had engaged in protected whistleblower activity based on his internal disclosures and formal SEC complaint.

3. **Retaliatory Conduct**: Following Plaintiff's protected activities, Defendants engaged in a systematic pattern of adverse actions constituting unlawful retaliation:

   a. Stripping of Managerial Authority and Access Denial

     o Defendants removed Plaintiff from his co-managerial role and denied him access to investor contact information necessary to fulfill his fiduciary obligations to Fund investors.

   b. Cease-and-Desist Demands and False Accusations

     o On July 24, 2024 and October 1, 2024, Defendants' counsel issued cease-and-desist letters falsely accusing Plaintiff of "fraudulent," "vexatious," and "deceptive" conduct for continuing fund-related communications, despite his legitimate role and ongoing investor obligations. (Exhibit Y) (Exhibit Z)

   c. Threats of Legal Sanctions

     o On March 10, 2025, Defendants threatened Plaintiff with a motion to compel arbitration and attorney fee claims unless he dismissed his federal whistleblower complaint, constituting direct retaliation for exercising statutory rights.(Exhibit AA)

   d. Threatened Litigation Over Draft Communications

     o On May 30, 2025, Defendants threatened legal action against Plaintiff solely for drafting (but not sending) a letter to Fund investors describing his efforts to protect Fund assets, using this as justification to further obstruct his access to investor information. (Exhibit BB)

   e. Public Defamation and Professional Attacks

     o Defendants publicly accused Plaintiff of financial incompetence, gross mismanagement, and unfounded valuations without due process, designed to discredit him and chill further protected whistleblowing activity.

   f. Obstruction of Litigation

- On April 23, 2025, defense counsel demanded unredacted versions of Plaintiff's court filings in an apparent attempt to deter prosecution of his case and penalize him for asserting legal rights. (Exhibit CC)

These retaliatory acts were taken because of Plaintiff's protected whistleblower activity in a deliberate attempt to silence, discredit, intimidate, and isolate Plaintiff. Such conduct has caused Plaintiff substantial harm, including damage to his professional reputation, interference with his fiduciary duties, and obstruction of his ability to protect investor interests. ($ Amount TBD)

15 U.S.C. § 78u-6(h)(1)(A) prohibits any adverse action against individuals who lawfully provide information to the SEC or participate in proceedings related to securities law violations, and provides a private right of action for such retaliation.

## COUNT VI: VIOLATION OF DELAWARE UNIFORM FRAUDULENT TRANSFER ACT (6 Del. C. §§ 1301 et seq.)

1. **Transfers Subject to DUFTA:** Defendants made transfers of assets totaling approximately $10,000,000 in converted mortgage loan assets from PSNF/PSMG and more than approximately $13,000,000 in transfers to entities under Defendants' control, including but not limited to Pacific Option One LLC Fund, Alpha One LLC Fund, Pacific Private Money Inc., Pacific Freedom Fund LLC, Pacific Private Money Fund LLC, and Pacific Opportunity Fund LLC.
2. **Creditor Status:** Plaintiff is a creditor of PSNF/PSMG by virtue of his $445,000 investment, unpaid management fees, and distributions wrongfully withheld.
3. **Fraudulent Transfer Elements:** These transfers were made:
   - Without receiving reasonably equivalent value in exchange (6 Del. C. § 1304(a)(2))
   - With actual intent to hinder, delay, or defraud creditors, including Plaintiff (6 Del. C. § 1304(a)(1))
   - While PSNF/PSMG was insolvent or became insolvent as a result of the transfers (6 Del. C. § 1305(a))
4. **Badges of Fraud:** The transfers exhibit multiple badges of fraud under 6 Del. C. § 1304(b), including:
   - Concealment of the transfers through "black-box" operations
   - Transfers to related entities controlled by Defendants
   - Retention of possession or control by Defendants after transfer
   - Transfers occurring after Plaintiff began questioning financial irregularities

## In Conclusion

Defendants' conduct demonstrates a systematic scheme to misappropriate investor funds and assets rather than operate legitimate business entities. Their actions were designed to gain Plaintiff's trust, access his business model and intellectual property, and unlawfully convert valuable assets developed through Plaintiff's substantial investment of time, capital, and expertise.

Defendants come before this Court with unclean hands, having engaged in a pattern of financial misconduct. {EXHIBIT W}{EXHIBIT X} As Defendants themselves acknowledged to Plaintiff in 2020 and 2021, they have previously engaged in similar conduct with other business partners, whom they financially harmed through comparable schemes.

The evidence demonstrates that Defendants systematically:

- Misappropriated millions of dollars in investor funds
- Breached their fiduciary duties to Plaintiff and PSNF investors
- Converted mortgage loan assets for their personal benefit
- Engaged in unauthorized financial transactions
- Retaliated against Plaintiff for his protected whistleblower activity

Defendants' conduct has caused substantial financial harm to Plaintiff and PSNF investors, undermined the integrity of the business operations, and violated both state and federal law. Their actions demonstrate a deliberate scheme to defraud Plaintiff and investors for personal gain.

For these reasons, Plaintiff respectfully requests that this Court grant the relief sought herein and hold Defendants accountable for their misconduct.

## E. Prayer for Relief

**WHEREFORE, Plaintiff respectfully requests that this Court:**

1. Award compensatory damages in an amount to be proven at trial, including restitution of all misapplied funds and protection of investor interests;
2. Award punitive damages for Defendants' willful and fraudulent conduct;
3. Award pre- and post-judgment interest on all monetary awards;
4. Award attorney's fees and costs of suit incurred herein at the rate of $425 per hours for pro se litigant.
5. Issue a declaratory judgment affirming Plaintiff's ongoing status as Co-Manager of PSMG and President of PSMG;
6. Issue preliminary and permanent injunctions preventing Defendants from: (a) further misrepresenting Plaintiff's status or disseminating false claims regarding his resignation; and (b) further dissipation of assets pending resolution of this matter;
7. Appoint a neutral third-party receiver to manage the remaining assets of PSNF and PSMG, ensuring transparency, accountability, and protection of investor interests;
8. Declare any transfers of assets by Defendants to third parties as fraudulent transfers under Delaware Uniform Fraudulent Transfer Act (6 Del. C. §§ 1301 et seq.) and order recovery of all such assets; (6 Del. C. § 1307)
9. Order disgorgement and fee forfeiture of any monies and benefits wrongfully obtained by Defendants during their membership in PSMG;

10. Grant such other and further relief as the Court deems just and proper.

## F. Demand for Jury Trial

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Mark Brown, Pro Se
5109 82nd St., Ste. 71135
Lubbock, TX 79424
(806) 748-1305
info@enhancemtg.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record via electronic mail on July 7-15 , 2025.

/s/ Mark Brown
Mark Brown

18

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Mark Brown

**(b)** County of Residence of First Listed Plaintiff    Lubbock
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

## DEFENDANTS

1. Edward E.N.Brown, 2. Mark Deter Hanf, 3. Pacific Private Money Group, LLC

County of Residence of First Listed Defendant    Marin
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Mullin Hoard & Brown, L.L.P
David Mullin

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 835 Patent - Abbreviated | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | New Drug Application | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 880 Defend Trade Secrets | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | | Act of 2016 | ☐ 485 Telephone Consumer |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | **LABOR** | | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | Exchange |
| | Medical Malpractice | | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Leave Act | | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| | Employment | **Other:** | **IMMIGRATION** | 26 USC 7609 | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | Actions | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Delaware Code Title 6

Brief description of cause:
Breach of Contract, Breach of Fiduciary Duty, Conversion, Whistleblower Retaliation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE    Judge Matthew J. Kacsmaryk    DOCKET NUMBER    2:25-cv-00028-Z

DATE
07/15/2025

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

**Mark Brown, Individually, Pro Se,**
**Plaintiff,**

v.

**Edward Evan Nelson Brown,**
**Defendant;**

**Mark Deter Hanf,**
**Individually, and as President of the**
**Managing Members of Pacific**
**Private Money Group, LLC,**
**Defendant,**

**Pacific Private Group, LLC,**
**Defendant**

**CASE NO. 2:25-cv-00028-Z**

## CERTIFICATE REGARDING JUDGE-SPECIFIC REQUIREMENTS

I, the undersigned attorney, hereby certify that I have read and will comply with all judge-specific requirements for Judge Matthew J. Kacsmaryk, United States District Judge for the Northern District of Texas.

I further certify that no portion of any filing in this case will be drafted by generative artificial intelligence or that any language drafted by generative artificial intelligence—including quotations, citations, paraphrased assertions, and legal analysis—will be checked for accuracy, using print reporters or traditional legal databases, by a human being before it is submitted to the Court. I understand that any attorney who signs any filing in this case will be held responsible for the contents thereof according to applicable rules of attorney discipline, regardless of whether generative artificial intelligence drafted any portion of that filing.

1

Mark Brown, Pro Se
Plaintiff