IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

MARK BROWN,

      Plaintiff,

v.

EDWARD EVAN NELSON
BROWN, *et al.*,

      Defendants.

2:25-CV-028-Z

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Compel Arbitration and Dismiss or, if Necessary and in the Alternative, Motion for More Definite Statement Due to Failure to Comply with Rules 8 and 9 ("Motion"), filed August 5, 2025. ECF No. 38. Plaintiff Mark Brown responded on August 26, 2025. ECF No. 41. Defendants replied on September 8, 2025. ECF No. 43. The Motion is now ripe. For the following reasons, the Motion is **GRANTED in part**. Plaintiff's Motion to Disqualify Defendants' Counsel (ECF No. 44) and Emergency Ex Parte Motion for Temporary Restraining Order and for Other Relief (ECF No. 49) are **DENIED** as moot.

### BACKGROUND

The Court is familiar with the facts of this case. Plaintiff, proceeding *pro se*, sued Defendants on February 6, 2025, for misapplication of investor and company funds, breach of fiduciary duties, conversion, breach of contract, and misrepresentation. ECF No. 3. He named as defendants Mark Deter Hanf, Edward Evan Nelson Brown, and Pacific Private Money Group, LLC ("PPMG"). *Id.* After some initial confusion about which LLC Plaintiff meant to sue, Plaintiff clarified that he did intend to name as a defendant Pacific Private

Money Group, LLC. *See* ECF No. 20 at 1 (Plaintiff admitting the "correct name" is Pacific Private Money Group, LLC).

Plaintiff brought a litany of claims against Defendants. His suit centered on "Pacific Southwest Note Fund, LLC" ("PSNF") and "Pacific Southwest Management Group, LLC" ("PSMG"), the entity that is the sole manager of PSNF. ECF No. 3 at 2; ECF No. 9 at 4 (PSMG is "the sole manager" of PSNF). PSNF's current governing document is "the First Amended and Restated Limited Liability Company Operating Agreement of Pacific Southwest Note Fund LLC." ECF No. 39 at 2. The parties refer to this document as the "Fund Operating Agreement." *Id.*; ECF No. 42 at 1, 5. The parties agree that Delaware law controls the Court's interpretation of the Fund Operating Agreement, as PSNF is "a Delaware limited liability company" with its principal place of business in Lubbock, Texas. ECF No. 39 at 2; ECF No. 42 (relying on Delaware law throughout). The Fund Operating Agreement also contains a choice-of-law provision for Delaware. *See* ECF No. 42 at 20 ("This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Delaware . . . .").

Plaintiff claimed to be a "Co-Manager" and a "manager" of PSNF and a "Co-Manager" and "President" of PSMG. ECF No. 3 at 7, 21. Through these roles, he had authority over these organizations via an operating agreement. *See id.* at 3. He alleges that Defendants took action against PSNF's investors and against him in his leadership role, including "misappropriating investor and company funds, breaching fiduciary duties, and conducting unauthorized financial transactions, which have devalued [Plaintiff's] equity and exposed investors to significant risks." *Id.* at 2. Plaintiff brought five causes of action: (1) "Misapplication of Investor and Company Funds"; (2) "Breach of Fiduciary Duty";

2

(3) "Conversion of Mortgage Loan Assets Owned by Investors"; (4) "Breach of Contract"; and (5) "Misrepresentation related to Resignation." *Id.* at 19–21.

On July 1, 2025, the Court dismissed Plaintiff's Complaint for lack of subject-matter jurisdiction. *See* ECF No. 35 at 8–9. However, the Court granted Plaintiff "leave to amend his Complaint within fourteen days of the date of this Order to attempt to properly allege" facts supporting jurisdiction. *Id.* at 9. The Court expressly noted that "[i]f Plaintiff opts to file an amended complaint, Defendants and Plaintiff may refile any appropriate motions, including a Motion to Dismiss and Compel Arbitration." *Id.* Plaintiff filed an Amended Complaint—which does properly allege subject-matter jurisdiction—on July 15, 2025. ECF No. 36. Defendants then filed the instant Motion.

### LEGAL STANDARD

"The Federal Arbitration Act (FAA) provides that a written agreement to arbitrate disputes arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Seifert v. United Built Homes, LLC*, 684 F. Supp. 3d 555, 562 (N.D. Tex. 2023) (quoting 9 U.S.C. § 2). The FAA "does not permit a trial court to exercise any discretion, 'but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).

Courts in the Fifth Circuit conduct a two-step analysis to determine whether a claim must be arbitrated. *See Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019). "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement. Ordinarily both steps are questions for the court."

3

*Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). However, "where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).

"[I]f the party seeking arbitration points to a purported delegation clause, the court's analysis is limited." *Kubala*, 830 F.3d at 202. The court "performs the first step—an analysis of contract formation—as it always does." *Id.* "But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* (citing *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.*

Lastly, a court liberally construes a *pro se* party's filings, and the filings of *pro se* parties are held "to less stringent standards than formal pleadings drafted by lawyers." *United States v. Davis*, 629 F. App'x 613, 618 (5th Cir. 2015) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam)). Nevertheless, a *pro se* plaintiff is still claiming the benefit of the courts, and so must adhere to judicial procedures and abide by the substantive law. *See Thorn v. McGary*, 684 F. App'x 430, 433 (5th Cir. 2017) (per curiam) (a *pro se* plaintiff is not "exempt . . . from compliance with the relevant rules of procedural and substantive law" (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))). A court will squint at *pro se* filings to discern what may be there—but it will not see things that are not there. *See Smith*, 735 F. App'x at 851 ("[T]here are limits on how far we will go to assist *pro se* plaintiffs."). "[E]ven a *pro se* litigant has the right to plead himself out of court . . . ." *Estrada v. Dominguez*, No. 200-CV-064, 2001 WL 506982, at *2 (N.D. Tex. May 14, 2001).

ANALYSIS

Defendants have "point[ed] to a purported delegation clause" in the Fund Operating Agreement. *Kubala*, 830 F.3d at 202; *see also* ECF No. 39 at 4 ("The Fund Operating Agreement contains an arbitration agreement with a 'delegation clause.'" (citation modified)). However, as Defendants concede, "the copy of the Fund Operating Agreement that is in Defendants' possession" does not "bear Plaintiff Mark Brown's signature." ECF No. 29 at 6; ECF No. 42 at 1 ("Plaintiff never signed the Fund Operating Agreement."). The key remaining question, then, is whether the Agreement may still be enforced despite lacking Plaintiff's signature.

### I. Contract Formation

The first question under *Kubala* is whether, as a matter of Delaware law,[1] the parties entered into a valid agreement to arbitrate. *See Hurley v. Emigrant Bank*, No. 3:19-CV-011, 2019 WL 5537330, at *3 (N.D. Tex. Oct. 25, 2019) ("In determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts." (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004))). Even though it is "not in dispute" that Plaintiff did not sign the Fund Operating Agreement, the Agreement may still be enforceable under one or more of several doctrines that bind non-signatories to arbitrate their claims. ECF No. 43 at 2. Defendants list five such doctrines: "(a) third-party beneficiary, (b) 'direct benefits estoppel,' (c) incorporation by reference, (d) assumption, and (e) agency." *Id.*; *see also Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 754 (Del. Ch. 2023) ("Courts have recognized at least five theories for binding nonsignatories to arbitration agreements . . . ."). Plaintiff concedes that these theories sometimes bind non-signatories to arbitrate and adds a sixth, the

---

[1] As already noted, the Fund Operating Agreement contains a choice-of-law provision for Delaware, and the parties agree that Delaware law applies.

"veil-piercing/alter ego" doctrine. ECF No. 42 at 6 (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006)). But he contends that these theories are "narrowly construed" and so do not apply to the Fund Operating Agreement. *Id.* Even narrowly construed, however, the direct benefits estoppel theory plainly binds Plaintiff to arbitrate his claims.

"The doctrine of equitable estoppel prevents the non-signatory from accepting the benefits of the agreement without also accepting its burdens." *Fairstead Cap.*, 288 A.3d at 755 (quoting *Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1074 (Del. Ch. 2021)). This doctrine encompasses "forum selection provision[s]," including arbitration clauses, which are "a specialized kind of forum-selection clause." *Id.* at 754–55. "Estoppel may arise in light of the knowing acceptance of the benefits of a contract." *Id.* at 755 (quoting *Sustainability P'rs LLC v. Jacobs*, 2020 WL 3119034, at *6 (Del. Ch. June 11, 2020) (citation modified)). "Delaware courts have deemed both pecuniary and non-pecuniary benefits sufficient to satisfy th[is] test." *Id.* (quoting *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *4 (Del. Ch. Sept. 18, 2019)). Benefits under a contract "must be direct" and must "actually be received; the mere 'contemplation' of a benefit does not directly confer one." *Id.* (quoting *Fla. Chem.*, 262 A.3d at 1091).

The doctrine of direct benefits estoppel applies here. Plaintiff, though a non-signatory to the Fund Operating Agreement, is suing to enforce some provisions of the Agreement while arguing that others—namely, the arbitration clause—should not apply. *See* ECF No. 36 at 17 (asking the Court to issue a declaratory judgment, award damages, and appoint a third-party receiver under the Fund Operating Agreement). Plaintiff claims to be a "Manager," "Co-Manager," and "President" of various entities associated with PSNF. ECF No. 36 at 9. He claims to have "never resigned" from these positions. *Id.* at 10. And he states that he was

6

allotted forty-five percent ownership of PSMG, the entity that manages PSNF, as compensation. *Id.* at 9. This is more than sufficient to show that Plaintiff received the kind of direct benefit from the Fund Operating Agreement that binds him to arbitrate his claims under that Agreement. *See, e.g., Fairstead Cap.*, 288 A.3d at 755 (holding that the "direct-benefit test applie[d]" where the non-signatories received an ownership interest in an investment fund); *Cap. Grp. Cos. v. Armour*, No. CIV. A. 422, 2004 WL 2521295, at *2–3 (Del. Ch. Oct. 29, 2004) (enforcing forum selection provision against employee's non-signatory wife who received stock under employee's employment agreement); *McWane, Inc. v. Lanier*, No. CV 9488, 2015 WL 399582, at *7 (Del. Ch. Jan. 30, 2015) (holding that non-signatory stockholders received a direct benefit from a merger agreement where they "collectively received $5,383,108.63 from the sale of their stock"); *Baker v. Impact Holding, Inc.*, No. CIVA 4960, 2010 WL 1931032, at *4 (Del. Ch. May 13, 2010) (finding that "a right to a seat on the board of directors" of an investment company for which the plaintiff was a manager constituted a "direct benefit").

Even as he sues to enforce the Fund Operating Agreement, Plaintiff maintains that he should not be forced to submit to arbitration because he "never signed" the Agreement. ECF No. 42 at 5. But "[e]quity will not allow a party to sue to enforce the provisions of a contract that it likes, while simultaneously disclaiming the provisions that it does not." *Aveta Inc. v. Cavallieri*, 23 A.3d 157 (Del. Ch. 2010) (quoting *Town of Smyrna v. Kent Cnty. Levy Ct.*, 2004 WL 2671745, at *4 (Del. Ch. Nov. 9, 2004)). Thus, a non-signatory to a contract "will be estopped from arguing that a dispute-resolution provision does not apply when the non-signatory 'consistently maintain[s] that other provisions of the same contract should be enforced to benefit him.'" *Id.* (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001) (applying Delaware law)).

7

If Plaintiff wishes to enforce the aspects of the Fund Operating Agreement that benefit him, he must accept the Agreement in its entirety. Instead, he is speaking out of both sides of his mouth: He asks the Court to enforce the provisions of the Fund Operating Agreement that favor him while ignoring the provisions that don't. The law of equity does not permit this. Plaintiff is therefore equitably estopped from pursuing his claims in this Court.

## II. Delegation Clause

The "only question" that remains "is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202 (citing *Rent–A–Ctr.*, 561 U.S. at 68–69). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.*

The Fund Operating Agreement clearly does contain such a clause. Article 8, Section 3 of the Agreement states:

> Any dispute, claim or controversy arising out of or relating to [the Fund Operating Agreement] . . . including (without limitation) the determination of the scope or applicability of this agreement to arbitrate . . . shall be brought within one year of its accrual and be determined by arbitration in the county of Lubbock, State of Texas, before one arbitrator.

ECF No. 40 at 45–46. This clause is substantively indistinguishable from the delegation clause the United States Supreme Court found to be enforceable in *Rent-A-Center*:

> [T]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

561 U.S. at 66. Both clauses delegate to the arbitrator—not the Court—the power to resolve "any dispute" relating to the underlying agreement. It follows that the clause Defendants "point[] to" is a valid and enforceable delegation clause. *Kubala*, 830 F.3d at 202. The Court therefore **GRANTS** Defendants' Motion to Compel Arbitration.

8

### III. Plaintiff's Other Arguments

Plaintiff raises several other arguments against the Fund Operating Agreement's arbitration clause. First, he argues that Defendants' "refusal to participate in mediation" should "bar them from invoking arbitration" even if the arbitration clause is enforceable. ECF No. 42 at 10. He makes this argument in tandem with another, related argument: that Defendants waived arbitration through their "inconsistent conduct," including "[r]ejecting mediation." *Id.* at 12–13. But he cites no legal authority for this proposition, and in fact, the case law directly refutes it. *See, e.g., Matthews v. Univ. of Incarnate Word*, No. SA-07-CA-1040, 2008 WL 557961, at *2 (W.D. Tex. Feb. 22, 2008), *report and recommendation adopted sub nom., Matthews v. Univ. of the Incarnate Word*, No. CV SA-07-CA-1040, 2008 WL 11417228 (W.D. Tex. Apr. 9, 2008) ("The defendants' refusal to mediate Matthews's dispute has no bearing on the enforceability of the arbitration agreement.").

Plaintiff's other arguments fare no better. Offering no evidence for this claim, he flatly asserts that the arbitration clause is an "alleged forgery" that Defendants "secretly inserted" into the Fund Operating Agreement. ECF No. 42 at 11. Without more, this is not enough to defeat Defendants' Motion. And in any event, Plaintiff is attempting to wield the entire Agreement against Defendants through this lawsuit, *including* the arbitration clause. This brings us back to direct benefits estoppel and the principle that a non-signatory to a contract "will be estopped from arguing" that one provision does not apply to him while "maintain[ing] that other provisions of the same contract should be enforced to benefit him." *Aveta*, 23 A.3d at 182.

Plaintiff raises a final argument: The FAA requires courts to stay cases pending arbitration rather than dismiss, as Defendants requested in their Motion. *See* ECF No. 42 at 13; ECF No. 39 at 1 ("Defendants . . . move to compel arbitration and dismiss the case."). On this score, Plaintiff is correct. The Supreme Court unanimously held in *Smith v. Spizzirri*

9

that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." 601 U.S. 472, 478 (2024). Plaintiff has requested such a stay.[2] *See* ECF No. 42 at 18 ("In the alternative, if the Court were to compel arbitration, Plaintiff expressly requests a stay under 9 U.S.C. § 3 . . . ."). The Court accordingly **DENIES** Defendants' Motion insofar as Defendants ask the Court to dismiss this case pending arbitration.

CONCLUSION

Defendants' Motion is **GRANTED in part**. This case is **STAYED** pending arbitration. Plaintiff's Motion to Disqualify Defendants' Counsel (ECF No. 44) and Emergency Ex Parte Motion for Temporary Restraining Order and for Other Relief (ECF No. 49) are **DENIED** as moot.

**SO ORDERED**.

December 16, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

[2] Defendants agree that "now that Plaintiff has requested a stay in his response to the Motion," *Spizzirri* "requires that the Court stay, rather than dismiss, this case while arbitration is pending." ECF No. 43 at 11 n.6.